UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                         |
|------------------------------|---|-------------------------|
| STEVE WILSON,                | ) |                         |
|                              | ) |                         |
| Plaintiff,                   | ) |                         |
|                              | ) |                         |
| v.                           | ) | Civil No. 23-10606-LTS  |
|                              | ) |                         |
| WEISTEC ENGINEERING, INC.,   | ) |                         |
|                              | ) |                         |
| Defendant.                   | ) |                         |

ORDER ON DEFENDANT'S MOTION TO DISMISS
AND PLAINTIFF'S MOTION TO STRIKE (DOC. NOS. 6, 16)

October 11, 2023

SOROKIN, J.

Steve Wilson, a Massachusetts resident, filed this lawsuit against Weistec Engineering, Inc., a California corporation ("Weistec"). Doc. No. 1 ¶¶ 1-2. The suit arises from Wilson's dissatisfaction with a Weistec product. Wilson alleged unfair and deceptive trade practices under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 9 ("Chapter 93A"), and invoked 28 U.S.C. § 1332 as the basis for this Court's jurisdiction. Doc. No. 1 ¶¶ 3, 14.

In response, Weistec moved to dismiss for lack of personal jurisdiction, arguing that it does not maintain sufficient contacts within Massachusetts to be sued here. See generally Doc. No. 6. Weistec also moved to dismiss for failure to state a claim and for lack of standing. Id. Wilson opposed and later filed a motion to strike Weistec's reply brief. Doc. No. 16. at 1. For reasons explained below, both pending motions are DENIED.

I.  BACKGROUND

In October 2020, Wilson reviewed an article published by Weistec on its website and called Weistec for a quote on the featured product. Doc. No. 14 at 2.[1] Weistec then emailed Wilson, requesting contact information and the specifications of Wilson's order. Doc. No. 14 at 9. A Weistec sales representative and Wilson exchanged several emails regarding the quote before Wilson purchased the Weistec product. Id.; Doc. No. 1 ¶¶ 7-8. Wilson was in Massachusetts while conducting each of these activities, and the product was shipped to Massachusetts. Doc. No. 14 at 6.

The article Wilson alleges led to this transaction stated that Weistec's product, a M157 W.4 Turbocharger ("Turbocharger"), if installed in a car with the identical make and model of Wilson's car, could achieve a "0-60 mph launch in 2.7 seconds." Doc. No. 1 ¶ 8. Weistec allegedly also communicated with RayTeam, the third-party installer located in Massachusetts that installed the Turbocharger into Wilson's car. Doc. No. 14 at 3. Wilson alleges that despite installing the Turbocharger, his car did not achieve the expected launch time. Doc. No. 1 ¶ 9.

After emailing Weistec about his disappointing launch results, Wilson received email responses from Weistec that he had to purchase additional Weistec products to achieve the expected launch time, and that additional factors could impact the performance. Id. ¶ 10. Wilson alleges that these additional considerations were not disclosed in Weistec's online article, and that the omission was materially misleading. Id. ¶¶ 10-11. During this exchange, numerous emails were sent between Wilson and Weistec regarding the purchase of additional parts,

---

[1] In examining a challenge to personal jurisdiction, the court can consider the facts from the pleadings and any supplemental filings on the record, giving credence to the plaintiff's version of genuinely contested facts. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). Here, the Court draws facts from Wilson's Complaint and declaration in response to the motion to dismiss. Doc. Nos. 1, 14.

Wilson's dissatisfaction with the Turbocharger, and the allegedly misleading nature of Weistec's article. Id. at 3.

Thereafter, Wilson sent Weistec a demand letter and proposed a settlement. Id. ¶ 12. In his demand, Wilson sought recovery of all amounts paid related to the installation of the Turbocharger, which he alleges totaled $92,427.77, plus interest and attorneys' fees. Doc. No. 1-3 at 3. Weistec did not agree to the demand. Now, in a Chapter 93A action, Wilson asserts that the online article was "false, misleading and deceptive" and accuses Weistec of unfair and deceptive trade practices. Id. ¶¶ 11, 16.

Weistec responded to the Complaint by moving to dismiss for lack of personal jurisdiction, failure to state a claim, and lack of standing. Doc. No. 6 at 1. Wilson filed an opposition to the motion, Doc. No. 14, then Weistec replied, Doc. No. 15. In turn, Wilson moved to strike Weistec's reply, or in the alternative, for leave to file a sur-reply. Doc. No. 16. That motion engendered further briefing, which is now complete. Doc. Nos. 18, 19.

## II. LEGAL STANDARD

For a federal court to exercise personal jurisdiction over a nonresident defendant in a diversity case, Wilson must satisfy both Massachusetts's long-arm statute[2] and the Due Process Clause of the Fourteenth Amendment. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2015) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)). "The requirements of the Massachusetts long-arm statute are similar to—although not

---

[2] Mass. Gen. Laws ch. 223A, § 3(a) grants personal jurisdiction over a defendant "transacting any business in this commonwealth." The language of the statute is "to be generously applied" in determining whether a defendant "participated in the forum's economic life." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). Courts interpret "transacting any business" to extend as far as the Due Process clause of the Fourteenth Amendment. Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 (1st Cir. 2002).

necessarily the same as—those imposed by the Due Process Clause." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Because the difference between these requirements is not material here, we move directly to the constitutional analysis.[3]

Thus, in accordance with due process requirements, a federal court can exercise personal jurisdiction over a nonresident defendant only where the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). A federal court may exercise either general or specific jurisdiction over a defendant. Cossart, 804 F.3d at 20. Here, Wilson only asserted a claim of specific jurisdiction as the basis for the district court's jurisdiction. Doc. No. 14. at 1. This Court limits its analysis accordingly.

Specific jurisdiction allows a court to hear a case if it "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). Federal courts apply a three-factor test in determining whether specific jurisdiction exists over a defendant: (1) "The claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities;" (2) "[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) "[T]he exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." Foster-Miller, 46 F.3d at 144. In short, a claim of specific jurisdiction

---

[3] Additionally, both parties here construe the Massachusetts long-arm statute to extend to the full limit allowed by the U.S. Constitution. See Doc. No. 6 at 4; Doc. No. 14 at 4.

must satisfy the three components of relatedness, purposeful availment, and reasonableness. See Foster-Miller, 46 F.3d at 144. Wilson bears the burden of demonstrating the presence of all three factors to establish specific jurisdiction. See A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016); Phillips Exeter, 196 F.3d at 288.

To avoid dismissal under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the pleading stage, the plaintiff does not need to demonstrate that he is likely to prevail, but his claim must suggest "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words, a complaint must provide enough facts to state a claim to relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).

III. DISCUSSION

A. Motion to Strike

Motions to strike "are generally disfavored" and "are rarely granted without a showing of prejudice to the moving party." Pineda v. Skinner Servs., Inc., No. 16-cv-12217-FDS, 2020 WL 5775160, at *6-7 (D. Mass. Sept. 28, 2020). This Court's general procedures, memorialized in an order docketed in this and every civil case pending in this session, allow for the filing of reply briefs as of right. Doc. No. 17 at 1. Weistec's reply brief complies with those procedures, including in length and the timing of its filing. See generally Doc. No. 15. Wilson's request to strike it is contrary to those procedures, is without justification, and is DENIED.

It is not the general practice of this Court to permit sur-replies, though the Court occasionally does so where the motion merits further briefing. Nothing about the pending motion to dismiss is so complex or unusual to justify a sur-reply. This is a simple case involving a single

5

legal claim arising under a routinely invoked state statute. The motion to dismiss raises simple challenges requiring application of straightforward legal principles. In these circumstances, further briefing is neither necessary nor an efficient use of the parties' and the Court's time. Wilson's request for leave to file a sur-reply is DENIED.[4]

    B.  <u>Personal Jurisdiction</u>

With those preliminary matters resolved, the Court turns to the merits of the motion to dismiss and first addresses Weistec's challenge to this Court's exercise of personal jurisdiction over it. The Court's first consideration focuses on the direct nexus between Wilson's claim and Weistec's contacts with Massachusetts. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995). A plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum" but proof that the plaintiff's claim was caused by the defendant's in-state conduct is not necessary. <u>Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1026 (2021). Courts evaluate this relatedness factor with a "flexible, relaxed standard." <u>Pritzker v. Yari</u>, 42 F.3d 53, 60-61 (1st Cir. 1994).

Here, based on Weistec's completed sales transaction with and ongoing communications to a Massachusetts resident where Weistec accepted payment from and communicated with a Massachusetts resident—a series of phone and email correspondence enduring throughout the purchase, shipment, installation, and troubleshooting of the Weistec product, <u>see generally</u> Doc. No. 14 at 6—this Court finds that Wilson's claim arises directly out of Weistec's contacts with Massachusetts and satisfies the relatedness factor.

---

[4] This Court, in light of this ruling, does not consider the briefs related to the motion to strike in resolving the motion to dismiss. To the extent the reply brief raised a new argument, Weistec has withdrawn that argument and this Court does not consider it. Doc. No. 18 at 1.

Weistec argues that it lacks a meaningful connection with Massachusetts and that the complaint refers to the "unilateral activity of another party"—a third-party installer Wilson selected—not Weistec. Doc. No. 15 at 1-2. Neither of those arguments change the fact that Weistec made contact with both Wilson and the installer based in Massachusetts. Id. at 2-3. Calls, emails, or faxes in a forum state that were instrumental to the formation of a contract are jurisdictional contacts. See, e.g., Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 113 (D. Mass. 2003) (finding personal jurisdiction where defendant placed four calls, five emails, three faxes to finalize a contract with the plaintiff); Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) (finding personal jurisdiction where defendant sent plaintiff four letters and one call to negotiate a guaranty).

Here, even though Wilson initiated communication with Weistec, Weistec acknowledges exchanging numerous calls and emails with both Wilson and Wilson's third-party installer in Massachusetts. Doc. No. 15 at 2-3. These correspondences included discussing the product, the sales quote, the payment method, and culminated in a sale. Id. After the sale, Weistec allegedly also provided technical support to Wilson's third-party installer in Massachusetts. Id.

The degree of relatedness is further supported here by Wilson's ability to access Weistec's website from within the forum state, representing "a sufficient affiliation between the forum and the underlying controversy." Access Now, Inc. v. Sportswear, Inc., 298 F. Supp. 3d 296, 302 (D. Mass. 2018). Even if Weistec correctly characterized its company website as relatively "passive," "mere advertising," or simply a communication tool, it does not erase the contact that Wilson alleges he had with Weistec as a result of viewing the website. Doc. No. 6 at 7-9. Importantly, according to Wilson's allegations, Weistec responded to Wilson's inquiry regarding the article on its website, offered a quoted price, eventually sold the product, and then

continued to help troubleshoot for Wilson, who was at all times in the forum state. See generally Doc. No. 14 at 6. All of this suffices to establish relatedness.

This Court now turns to whether Weistec's contacts with Massachusetts represented a purposeful availment by Weistec of the privilege of conducting business in Massachusetts. Ticketmaster, 26 F.3d at 207. The two elements comprising purposeful availment are voluntariness and foreseeability, which ensure that the defendant's contacts with the forum state are not "random," "fortuitous," or "attenuated," but rather stem from its own actions such that it should anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Weistec's physical presence in the forum state is not required for specific jurisdiction to attach. Bond, 764 F.2d at 933.

Because Weistec has voluntarily created "continuing obligations" between itself and a resident of the forum state, Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n, 339 U.S. 643, 648 (1950), it has availed itself of the privilege of conducting business in that state. Burger King, 471 U.S. at 475-76. Weistec made voluntary contacts with Massachusetts—on its own accord, it entered a sales transaction with a Massachusetts customer, thereby creating "continuing obligations" between Weistec and Wilson. This arrangement, including the potential anticipated usage of the Weistec product in a car owned and driven in Massachusetts, necessarily put Weistec on notice that it could foreseeably anticipate being sued in Massachusetts.

Finally, the Court evaluates whether the exercise of jurisdiction over Weistec is fair and reasonable according to five factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the

controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.[5] Ticketmaster, 26 F.3d at 209. The Supreme Court has explained that a state has a "'manifest interest' in providing its resident with a convenient forum for redressing injuries inflicted by out-of-state actors." McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957).

In selling its product to a Massachusetts customer, Weistec has "purposefully derived benefit" from its activities in Massachusetts. As such, it would be unfair to allow Weistec to cause harm in Massachusetts but then avoid the consequences arising from that harm. Burger King, 471 U.S. at 473. Because Weistec's activities are shielded by "the benefits and protections" of the forum state's laws it is also reasonable to require it to submit to the burdens of litigation in that forum. Id. at 475-76. Further, Massachusetts's interest need not be exclusive, nor even greater than the interest of other jurisdictions. See Foster-Miller, 46 F.3d at 151. (explaining that "[t]he purpose of the inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest").

Asserting jurisdiction in Massachusetts does not "ignore the legitimate interests of California" or "conflict with the principles of comity" as Weistec argues, but rather recognizes the extent to which Massachusetts has an interest in this issue. Doc. No. 15 at 4. Further, Wilson has not argued that appearing or litigating in Massachusetts will be inconvenient or burdensome for it. Upon review of the five factors, the exercise of jurisdiction over Weistec appears fair and reasonable to both parties and promotes the judicial system's interests.

---

[5] Weistec does not address this final component in its motion to dismiss, but this Court will briefly address this point.

In sum, Wilson has demonstrated each of the three components necessary to justify this Court's exercise of jurisdiction over Weistec in this case. To the extent Weistec seeks dismissal on personal jurisdiction grounds, its motion is DENIED.

C. Other Arguments

The other two arguments advanced in Weistec's motion are failure to state a claim and lack of standing. Doc. No. 6 at 1. Neither argument warrants dismissal for reasons the Court will briefly explain. Chapter 93A permits a private cause of action for injuries caused by another's unfair or deceptive act or practice. Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc., 840 N.E.2d 526, 528 (Mass. 2006). To state a claim under Chapter 93A, Wilson must allege that he suffered an economic injury caused by an unfair or deceptive act or practice. Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 744 (Mass. 2013). A representation about a product is "deceptive" under Chapter 93A when it has the capacity to mislead consumers, acting reasonably under the circumstances, causing them to act differently from the way they otherwise would have acted. Edlow v. RBW, LLC, 688 F.3d 26, 39 (1st Cir. 2012).

Here, reading the Complaint in the light most favorable to Wilson as the Court must at this stage, he has alleged enough facts to establish standing and plausibly allege a claim. Weistec's only arguments to the contrary are that its website merely operated as a communication tool for its customer base who mostly reside in California, that Weistec did not direct any marketing to Massachusetts, and that Wilson "unreasonably interpreted" Weistec's article. Doc. No. 6 at 8, 11. However, advertisements include any written "representation made by a seller in the course of the solicitation of retail business or which encourages a person to purchase a retail product." 940 Mass. Code Regs. 6.01. Weistec's article, according to Wilson, promoted the merits of a product to encourage sales but withheld additional relevant factors that

could impact the product's performance. See generally Doc. No. 1 ¶ 3. Wilson alleges that in his decision to purchase the product, he materially relied upon the article and ultimately suffered economic damages including the purchase price and installation costs totaling $92,427.77. Doc. No. 14 at 2, 14.

At this early pleading stage, Wilson has sufficiently alleged a Chapter 93A claim, and the requests to dismiss for failure to state a claim for relief and for lack of standing are DENIED.

IV. CONCLUSION

For the above reasons, the motion to dismiss (Doc. No. 6) and motion to strike (Doc. No. 16) are hereby DENIED.[6] The Clerk shall refer this matter to Magistrate Judge Boal for all purposes including pretrial management, non-dispositive motions, and reports and recommendations on dispositive motions.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[6] Wilson's requests for attorneys' fees and costs are also DENIED. See Doc. No. 1 at 4; Doc. No. 14 at 19.